# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES A. KEELING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-498-M |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff James A. Keeling brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Chief United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 10, hereinafter "R.__"). The parties have briefed their positions, and the case is now ready for decision. For the reasons set forth below, it is recommended that the Commissioner's decision be AFFIRMED.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his application for SSI on September 23, 2010, alleging a disability onset date of June 15, 2000, and seeking benefits on the basis of a post-

surgery back and neck condition as well as left leg and hip pain. R. 134, 138. The Commissioner initially denied Plaintiff's application. R. 49, 56. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 11, 2012. R. 21-38, 59-63. The ALJ issued an unfavorable decision on September 16, 2012. R. 11-17.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps); 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. R. 13. At step two, the ALJ determined that Plaintiff had the following severe impairment: status post lumbar surgery with residual chronic low back pain. R. 13.

At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 14. Specifically, the ALJ found that Plaintiff's back impairment did not "meet the requirements for listed musculoskeletal impairments." R. 14.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 14-16. The ALJ found that Plaintiff had the RFC to perform light work with additional postural limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with occasional climbing, stooping, kneeling, crouching and crawling and no ladder, rope, scaffolds.

R. 14; *see also* 20 C.F.R. § 416.967(b) (defining "light work"). At step four, the ALJ found that Plaintiff had no qualifying past relevant work. R. 16; *see also* 20 C.F.R. § 416.965.

At step five, the ALJ—applying the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 (the "Grids")—determined that jobs exist in significant numbers in the national economy that Plaintiff could perform. R. 17. Specifically, the ALJ determined that a person of Plaintiff's age, education, and work experience, who had the ability to perform the full range of light work, would fall within Rule 202.13 of the Grids—a classification that would prompt a finding that there are jobs in the national economy that Plaintiff can perform. R. 17. The ALJ found that the additional, nonexertional limitations reflected in Plaintiff's RFC—namely, restriction to only occasional climbing, stooping, kneeling, crouching, and crawling and no climbing of ladders, ropes, or scaffolds—would "have little or no effect on the occupational base of unskilled light work." R. 17. Therefore, the ALJ determined that application of Rule 202.13 of the Grids was appropriate and concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 17.

Plaintiff requested review by the Appeals Council, which was denied on March 11, 2013. R. 6-7, 1-5. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole

and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ erred at step three by not properly considering whether Plaintiff's back condition met or equaled Listing 1.04(A). *See* Pl.'s Br. (Doc. No. 12) at 3-10. As part of this claim of error, Plaintiff argues that the ALJ failed to consider all the medical evidence in the record, pointing out that the ALJ stated in his decision that he did not have the records of Plaintiff's 1995 back surgery when in fact they had been admitted into the record. *Id.* at 5-7. Further, Plaintiff argues that the ALJ erred by applying the Grids rather than seeking the testimony of a vocational expert.

4

*Id.* at 10-15. These claims of error are considered in turn.

   A. *Whether the ALJ Properly Considered Listing 1.04A*

Citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), Plaintiff argues that the ALJ failed to analyze whether Plaintiff's condition met or equaled a relevant Listing, namely Listing 1.04A (disorders of the spine: nerve root compression). *See* Pl.'s Br. at 3-4, 6. From that conclusion, Plaintiff argues that the matter must be remanded unless it can be shown that the ALJ's error was harmless, which would require a determination that other findings of the ALJ "'conclusively preclude [Plaintiff's] qualification under the listings at step three.'" *See id.* at 5 (quoting *Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005)).

In *Clifton,* "the ALJ did not discuss the evidence or his reasons for determining that [the claimant] was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that [the claimant's] impairments did not meet or equal any [Listing]." *Clifton*, 79 F.3d at 1009. Here, to the contrary, the ALJ stated why he viewed Plaintiff's medical evidence to be insufficient to meet the requirements of the relevant Listings:

> **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.**
>
> The claimant does not have findings of a loss of gait and station[;] nor are there findings of lack of gross and fine manipulation. There is no evidence of joint dysfunction or malformation. The claimant does not have consistent evidence of reflex loss, motor loss, sensory loss, muscle atrophy, positive straight-leg raising or other findings to meet the requirements for listed musculoskeletal impairments.

5

R. 14 (citation omitted). This analysis is complemented by the ALJ's discussion in other sections of the decision of: medical evidence relating to Plaintiff's back condition, the treatment Plaintiff has received since having back surgeries in the early 1990s, Plaintiff's testimony regarding his back condition, and the opinions of various physicians regarding Plaintiff's current functional capacities. R. 13-16.

Although the ALJ does not identify Listing 1.04 by number, his general reference to the small group of musculoskeletal impairments in the Musculoskeletal System Listings, and discussion of the factors pertinent to Listing 1.04A, are sufficiently specific to permit his analysis to be understood. *See* R. 14; 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.00, 1.04. As recognized in *Clifton*, the reason an ALJ is required to make express step-three findings is so that a reviewing court can "assess whether relevant evidence adequately supports the ALJ's conclusion that [a claimant's] impairments did not meet or equal any [Listing], and whether [the ALJ] applied the correct legal standards to arrive at that conclusion." *Clifton*, 79 F.3d at 1009. In this instance, the undersigned finds no error in the ALJ's identification of Listings by category rather than specific number, particularly where he also cites factors from the precise Listing that Plaintiff argues was improperly omitted. *Compare* R. 14, *with* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A.

Accordingly, the ALJ's step-three determination is reviewed under the familiar substantial evidence standard. *See Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014). For an impairment to meet or medically equal Listing 1.04A, the following is required:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by

sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A. The ALJ in his review of the medical evidence cites the following observations from Plaintiff's treating physician, Jehangir W. Gowani, M.D.: negative straight-leg raising test and normal motor strength at a January 2010 examination (R. 13, 255); no radiating pain, tingling, or numbness, but Plaintiff walking with a limp, at a February 2010 examination (R. 13-14, 249-50); Plaintiff walking with a normal gait and in no acute distress at a March 2010 examination (R. 14, 244-45); Plaintiff walking with a normal gait at a May 2010 examination (R. 14, 241-42); and Plaintiff walking with a normal gait and in no acute distress at a July 2010 examination (R. 14, 237-38).[1] The ALJ noted that from October 2010 through the date of the hearing in February 2012, Plaintiff had not sought further medical treatment. R. 14, 14; *see also* R. 32 (Plaintiff testified that his cousin, who had been paying for visits and medications, passed away).[2] The ALJ also cited, and quoted extensively, the case analysis of reviewing consultant Rayme L. Romanik, M.D. R. 16, 269.

---

[1] In each of the March 2010, May 2010, and July 2010 examinations, Dr. Gowani also observed that Plaintiff had no radiating pain, tingling, or numbness, but that Plaintiff reported chronic back pain of "9/10" that required medication of "8 lortabs a day." R. 244, 241, 237.

[2] On October 20, 2010, laboratory tests ordered by Dr. Gowani indicated that Plaintiff had not been taking the significant quantities of Xanax and Lortab that he had requested and Dr. Gowani had prescribed. R. 229. Dr. Gowani informed Plaintiff he would no longer prescribe Xanax and would require random drug screening, presumably to ensure that the medication was being taken by Plaintiff rather than used in another manner. *See* R. 229.

In support of qualification under Listing 1.04A, Plaintiff cites observations by Pamela B. Ghezzi, M.D., following a March 2010 examination of Plaintiff, which contrast significantly with those of Dr. Gowani. Pl.'s Br. at 8-9; R. 214-20. These include: limited range of motion in the lumbar spine, differences in leg length and width that Plaintiff submits are indicative of muscle atrophy, sensory loss on the left side, and a positive straight-leg raising test from a lying-down position. Pl.'s Br. at 8-9; R. 217-18. Omitted from Plaintiff's discussion is that Dr. Ghezzi did not diagnose Plaintiff with nerve root impingement; nor does Plaintiff point to such a diagnosis from any other medical source. In any event, the ALJ rejected Dr. Ghezzi's report and opinion and explained his reasons for doing so. R. 16. Plaintiff does not directly challenge on appeal the adequacy of the ALJ's analysis of Dr. Ghezzi's opinion.[3]

To determine that there is substantial evidence that supports an ALJ's finding, there must be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mays*, 739 F.3d at 574 (internal quotation marks omitted). This quantity is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Here—notwithstanding Dr. Ghezzi's differing assessment, which the ALJ addressed—the ALJ's finding that Plaintiff did not meet the requirements of the musculoskeletal Listings, including Listing 1.04A, was supported by substantial

---

[3] Plaintiff argues that the ALJ should not have placed greater reliance on the opinion of reviewing consultant Dr. Romanik than the observations of Dr. Ghezzi, *see* Pl.'s Br. at 7-9, but this argument is inapposite. The primary medical evidence that the ALJ (and Dr. Romanik) cited was the observations of Dr. Gowani, who was Plaintiff's treating physician, not those of Dr. Ghezzi. R. 13-16; R. 237-59, 214-20, 269. To obtain judicial review, it is insufficient to "suggest dissatisfaction" or merely mention an issue in the context of another matter. *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994).

8

evidence in the record as a whole. *See Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." (internal quotation marks omitted)). This claim of error does not require remand.

> B. *Whether Remand Should Be Ordered Due to the ALJ's Failure to Review Medical Records of Plaintiff's Back Surgery*

Plaintiff sought SSI benefits primarily on the basis of increased pain from a longstanding back injury. R. 26, 138. He testified that he had undergone two lumbar fusion surgeries in the early 1990s. *See* R. 26-27. Despite referring to a record of the 1995 surgery during the hearing, *see* R. 26-27, the ALJ stated in his decision that "there is no medical evidence of record of the surgeries." R. 15. Citing Plaintiff's testimony, a physician's note of a lumbar scar, and the assessment of Dr. Romanik, R. 13, 15, 16; *see also* R. 253-55, 269, the ALJ found that there was a "history of prior lumbar surgeries and persistent pain" and on that basis determined that Plaintiff had a "medically determinable impairment [of] status post lumbar surgery with residual chronic low back pain." R. 15, 16; *see also* R. 13. The ALJ expressly premised his RFC assessment on his acceptance that Plaintiff had undergone prior lumbar fusion surgeries including a "chance . . . [of a] multi-level fusion." R. 16.

Medical records from the 1995 back surgery were in fact present in the record before the ALJ. R. 199-213. These medical records show that on September 19, 1995, Plaintiff underwent lumbar fusion surgery at the L4-L5 level. R. 204-06. The 1995

9

records also refer to Plaintiff's prior back surgery, in which he underwent lumbar decompression and fusion with instrumentation. R. 204.

"The record must demonstrate that the ALJ considered all of the evidence." *Clifton*, 79 F.3d at 1009–10. That demonstration was not made here. The ALJ did not simply fail to discuss the medical records from the 1995 surgery, but incorrectly stated there were no such records before him.

The resulting question, then, is whether the ALJ's error may be considered harmless. In this regard, the undersigned finds insightful a discussion by the Tenth Circuit Court of Appeals on the application of the doctrine of harmless error in administrative appeals:

> We have generally recognized the applicability of [the] principle [of harmless error] in the administrative review setting. Further, we have specifically applied it in social security disability cases, though not always by name and without settling on a definitive characterization of its precise contours and range of application in this somewhat unique, nonadversarial setting. For example, this court has held that certain technical errors were minor enough not to undermine confidence in the determination of the case and that an ALJ's conduct, although improper, did not require reversal because the procedural impropriety involved had not altered the evidence before the ALJ. . . . [O]ne significant thing this . . . court [has not done is] hold an ALJ's failure to make a dispositive finding of fact harmless on the basis that the missing fact was clearly established in the record . . . .
>
> Two considerations counsel a cautious, if not skeptical, reception to this idea. First, if too liberally embraced, it could obscure the important institutional boundary preserved by *Drapeau*'s admonition that courts avoid usurping the administrative tribunal's responsibility to find the facts. Second, to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943)[,] and its progeny.
>
> With these caveats, it nevertheless may be appropriate to supply a

> missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

*Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (alterations, citations, and quotation marks omitted) (citing *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001)).

This case presents a different scenario than that directly considered in *Allen*. Therein, the ALJ had erred at step five both in (1) applying the Grids despite finding extensive exertional and nonexertional limitations; and (2) citing three occupations that the claimant could perform despite a vocational expert testifying that two of the occupations were not available upon consideration of the full range of the claimant's exertional and nonexertional limitations. *Allen*, 357 F.3d at 1143-44. As a result, the only way the step-five error could be deemed harmless was if a reviewing court were to conclude that the number of jobs permitted by the third and final occupation cited by the ALJ constituted a "significant number" as required by SSA regulations. *Id.* at 1144-45. Noting that the number of jobs shown for the third occupation was low enough that the ALJ would have been required to expressly justify any conclusion that it constituted a "significant number," the *Allen* court held that it would be improper for a reviewing court to make the missing determination. *See id.* at 1145.

Finding harmless error in this case would not require, as in *Allen*, post-hoc judicial supply of a missing determination reserved to the Commissioner. Rather, the ALJ herein failed to consider a particular piece of evidence, but in his analysis assumed the very facts that the evidence supports. The ALJ in his decision—like the Plaintiff in his testimony—

11

appropriately focused on the impairment and functional limitations that Plaintiff was experiencing at the time of his application. R. 13-16. While the occurrence of the surgeries is relevant to that analysis, the 1995 surgery occurred 17 years prior to the ALJ's decision, and thus any specific observations about Plaintiff's condition at that time have little or no evidentiary value. Thus, while Plaintiff justifiably criticizes the ALJ's error in not considering the records of the 1995 surgery, Plaintiff acknowledges that the "oversight concerning the evidence of record does not change the ALJ's determination of [Plaintiff's] severe impairment." Pl.'s Br. at 7.

Further, neither of the concerns cited by the *Allen* court—judicial usurpation of an administrative tribunal's responsibility to find the facts, and post hoc justification of administrative action—is present in this case. Because the ALJ accepted the prior back surgeries as having occurred, and expressly relied on that fact in making his determinations at steps three through five, a finding of harmless error would not depend on the reviewing court *independently* weighing any evidence or making any finding of fact.

While mindful of the good reasons to be cautious in applying the harmless error doctrine, the undersigned concludes that this case presents an "exceptional circumstance," albeit of a type different than discussed in *Allen*, in which "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145; *see also Seever v. Barnhart*, 188 F. App'x 747, 752 (10th Cir. 2006) (finding harmless error where ALJ failed to consider in his decision one functional limitation reported by a physician but included that limitation

in his hypothetical to the vocational expert); *Healy v. Colvin*, No. 12-30205-DJC, 2014 WL 1271698, at *9 (D. Mass. Mar. 27, 2014) ("Even if an ALJ overlooks some single piece of evidence, the error will be deemed harmless so long as the ALJ has explicitly considered all symptoms, both severe and nonsevere, in assessing Plaintiff's residual functional capacity and there is no indication that the ALJ failed to consider the cumulative effect of these impairments." (internal quotation marks omitted)). This claim of error does not require remand.

> C. *Whether the ALJ Improperly Applied the Grids Rather than Obtaining the Testimony of a Vocational Expert*

Plaintiff argues that the nonexertional limitations in Plaintiff's RFC precluded the ALJ from exclusively relying on the Grids at step five of the sequential evaluation. Pl.'s Br. at 10-15. Instead, says Plaintiff, the ALJ was required to obtain expert vocational testimony before determining that jobs exist in significant numbers in the national economy that Plaintiff can perform. *Id.*

A person claiming benefits under the Social Security Act bears the burden of proving a prima facie case of disability—i.e., that the claimant, as evaluated in steps one through four, has a medically determinable impairment that prevents the performance of his or her past relevant work. *Heard v. Barnhart*, 110 F. App'x 88, 90 (10th Cir. 2004); *see* 20 C.F.R. § 416.920(f). At step five, the burden shifts to the Commissioner to show there are sufficient alternative jobs that the claimant, in light of his or her medical-vocational profile, can perform. *Heard*, 110 F. App'x at 90. The Grids provide one method for the Commissioner to meet this burden. These Grids are tables that direct

step-five conclusions—either disabled or not disabled—based on the application of certain medical-vocational factors (e.g., age and education) to the standard exertional categories of sedentary, light, and medium work. *See* SSR 83-12, 1983 WL 31253 (Feb. 26, 1979); *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983); 20 C.F.R. pt. 404, subpt. P, app. 2. If there is not a table rule that accurately describes a claimant's abilities and limitations, the Grids may not be used. *Campbell*, 461 U.S. at 462 n.5. In that event, the Commissioner often must obtain the testimony of a vocational expert. *See* SSR 83-12, 1983 WL 31253, at *2.

For purposes of the Social Security Act, "exertional" abilities are the "primary strength requirements" used to classify occupations as sedentary, light, medium, heavy, and very heavy. *See* SSR 83-14, 1983 WL 31254, at *1 (Feb. 26, 1979). They "consist of three work positions (standing, walking, and sitting) and four worker movements of objects (lifting, carrying, pushing, and pulling)." *Id.* All other occupation-related demands are "nonexertional." *Id.* These include basic body functions such as balancing, seeing, hearing, and speaking; mental functions such as thinking, remembering, and working while under stress; manipulative functions such as reaching, grasping, fingering, handling, and operating pedals; postural functions such as climbing, stooping, kneeling, crouching, and crawling; and environmental tolerances such as working while exposed to heat, cold, noise, dust, dangerous moving machinery, unprotected elevations, or allergens. *Id.* at *1-2.

Generally, the Grids may not be relied on if a claimant's impairments prevent him or her from performing the full range of one of the exertional categories of work.

*Channel v. Heckler*, 747 F.2d 577, 579-80 (10th Cir. 1984). An exception occurs if the ALJ determines that the claimant's particular nonexertional limitations would have very little effect on the occupational base for that exertional category, in which case the step-five conclusion directed by the applicable table rule may be adopted without additional testimony by a vocational expert. *See id.* at 583 n.6; SSR 83-14, 1983 WL 31254, at *3-4, *6.

In this case, the ALJ found that Plaintiff was limited to the exertional category of light work and subject to additional nonexertional limitations of only occasionally climbing, stooping, kneeling, crouching, and crawling, and never climbing ladders, ropes, or scaffolds. R. 14-15. At step five, the ALJ referred to published statements of the Commissioner regarding each of these postural limitations and determined that they would "have little or no effect on the occupational base of unskilled light work." R. 17. On that basis, the ALJ determined that application of the table rule that would otherwise apply—Rule 202.13—was appropriate and concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 17.

In two Social Security Rulings, the Commissioner provides examples of postural and other nonexertional limitations that do and do not significantly impact the number of jobs a claimant can perform. *See* SSR 83-14 ("The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments"), 1983 WL 31254; SSR 85-15 ("The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments"), 1985 WL 56857 (Feb.

26, 1979).[4] SSR 83-14 prescribes that the inability to crouch or to climb ladders or scaffolding would not significantly affect the occupational base for light work. *See* SSR 83-14, 1998 WL 31254, at *2, *5. The ruling reflects the same conclusion for a restriction to only occasional stooping. *Id.* It further states that the inability to crawl or climb ropes would have "very little or no effect on the unskilled light occupational base." *Id.* at *5. SSR 85-15 states that a restriction to only occasional stooping or crouching would leave the "light occupational base . . . virtually intact." SSR 85-15, 1985 WL 56857, at *7. This ruling further states that a restriction on crawling or kneeling "would be of little significance in the broad world of work." *Id.* SSR 85-15 also states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work." *Id.* at *6.

Plaintiff argues that these statements do not—and therefore the ALJ did not—address the combined effect of *multiple* nonexertional limitations on the occupational base for light work. *See* Pl.'s Br. at 13.[5] This same question—whether the Grids may be

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Commissioner has adopted. 20 C.F.R. § 402.35(b)(1). These rulings, which are binding on all components of the SSA, are entitled to deference by a reviewing court unless they are clearly erroneous or contrary to law. *See Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993); 20 C.F.R. § 402.35(b)(1).

[5] Plaintiff also argues that the ALJ improperly relied on SSR 85-15 because that ruling is directed to the circumstance of a claimant who has nonexertional limitations but no exertional limitations (which would include being limited to a particular exertional category of work). Pl.'s Br. at 14. While Plaintiff is correct that SSR 83-14—which is directed to combined exertional and nonexertional limitations—is the governing ruling here, the ALJ cited both rulings and followed the procedure dictated by SSR 83-14. R.

16

exclusively relied on if a claimant restricted to light work is further limited by multiple nonexertional limitations—has been considered by a number of courts across the country. The prevailing view that emerges from these decisions is that the Commissioner's published statements in SSR 83-14 and SSR 85-15, as quoted above, permit application of the Grids, upon proper analysis by the ALJ, when the nonexertional limitations are *purely* postural. *See*, *e.g.*, *Bandy v. Shalala*, No. 93-2884, 1994 WL 33151, at *2 & n.3 (8th Cir. Feb. 7, 1994) (ALJ's reliance on Grids was proper where claimant was limited to light work and to only frequent stooping and occasional climbing, balancing, kneeling, crouching, and crawling); *Dier v. Colvin*, No. 13-CV-502, 2014 WL 2931400, at *4 (W.D.N.Y. Jun. 27, 2014) (same where claimant was limited to light work and to only moderate bending and climbing); *Hedrick v. Colvin*, No. 5:11-CV-113, 2013 WL 2434612, at *4-6, *11, *14 (W.D.N.C. Jun. 4, 2013) (same where claimant was limited to light work and to only frequent stooping, kneeling, crouching, and crawling; only occasional balancing and climbing of stairs and ramps; and no climbing of ladders, ropes, and scaffolds); *Virgin v. Astrue*, No. 6:11-cv-1165, 2012 WL 3601905, at *17 (M.D. Fla. Aug. 21, 2012) (same where claimant was limited to light work and to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling); *Beaulieu v. Astrue*, No. 10-81209-CIV, 2011 WL 4542546, at *8, *11 (S.D. Fla. Sept. 12, 2011) (same where claimant was limited to light work and to only occasional climbing stairs and ramps,

---

17. Further, the ALJ did not err by referring to statements made by the Commissioner in SSR 85-15 regarding the effect of certain postural limitations on the broad world of work or specific occupational categories. When evaluated in the proper context, these statements are relevant beyond the limited scope of SSR 85-15's express circumstances.

balancing, and stooping, as well as no kneeling, crouching, crawling, or climbing ladders, ropes, and scaffolds); *Ashby v. Astrue*, No. 4:09CV914, 2010 WL 2723127, at *1-2 (E.D. Mo. Jul. 8, 2010) (same where claimant was limited to light work and to only occasional stooping, kneeling, crouching, and climbing of stairs and ramps, as well as no crawling or climbing of ladders, ropes, and scaffolds); *Mitchell v. Astrue*, No. CV 07-4044, 2009 WL 542216, at *6-7 (C.D. Cal. Mar. 3, 2009) (same where claimant was limited to light work and to only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of stairs and ramps, as well as no climbing of ladders, ropes, and scaffolds or being exposed to work hazards); *Wadsworth v. Astrue*, No. 1:07-cv-0832, 2008 WL 2857326, at *10-11 (S.D. Ind. Jul. 21, 2008) (same where claimant was limited to light work and to only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, and scaffolds); *Carlson v. Barnhart*, No. 3:05CV1584, 2006 WL 2926818, at *7, *14-15 (D. Conn. Aug. 30, 2006) (same where claimant was limited to light work and to only occasional balancing, stooping, kneeling, crouching, and crawling, as well as to no climbing of ropes, ladders, and scaffolds or being exposed to environmental irritants).

While the undersigned has carefully considered the discussion in *Denison v. Astrue*, No. 10-1290, 2011 WL 3236071 (D. Kan. Jul. 28, 2011), which Plaintiff quotes from extensively without citation, the undersigned is persuaded by the reasoning of the prevailing view, at least with respect to assessing the effect of purely postural nonexertional limitations on light work. Although *Denison*'s analysis is not so narrow, the undersigned notes that at issue in that case were not just postural limitations but many

environmental limitations. *See id.* at *3 (noting RFC of light work, postural limitations, and "only limited exposure to temperature extremes, dust, humidity, wetness, hazards, fumes, odors, chemicals, or gases"); Pl.'s Br. at 13-15. In any event, it was reasonable for the ALJ in this case to find that the occupational base of light work available to Plaintiff was not significantly eroded by the relatively minimal postural limitations at issue. The statements by the Commissioner, in SSR 83-14 and SSR 85-15, as to the general effect of such postural limitations provide an adequate basis for the ALJ to have reasonably concluded that their effect, alone or in combination, on the jobs available to Plaintiff was insignificant.

For that reason, there was no error in the ALJ's exclusive reliance on the Grids. This claim of error does not require remand.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by August 29, 2014. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED on this 15th day of August, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE